UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROYSTON DERRICK,<br><br>               Petitioner,<br><br>   v.<br><br>WILLIAM BARR, et al.,<br><br>               Respondents. | CASE NO. C19-117-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Royston Derrick, who is proceeding through counsel, seeks release from immigration detention in this 28 U.S.C. § 2241 habeas action.[1] He maintains he is entitled to release because his detention by U.S. Immigration and Customs Enforcement ("ICE") has become indefinite within the meaning of *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). *See* Dkt. 1 at 3. The Government has moved to dismiss, arguing Mr. Derrick is lawfully detained and has failed to show his detention is indefinite. Dkt. 5. Mr. Derrick opposes dismissal. Dkt. 12. As discussed below, the Court recommends that the Government's motion to dismiss be **GRANTED**, Mr.

---

[1] Mr. Derrick does not challenge U.S. Immigration and Custom Enforcement's decision to deny supervised release following two file custody reviews. *See* Dkts. 1, 12; *see also* Dkt. 7-12; Dkt. 14 at ¶ 23. Likewise, he does not challenge the immigration judge's decision to deny bond or request a post-removal order bond hearing pursuant to *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1084-85 (9th Cir. 2011) (noncitizens detained for more than six months after their removal orders become judicially final are entitled to a bond hearing). *See* Dkts. 1, 12. Because Mr. Derrick is proceeding through counsel, the Court declines to consider these issues *sua sponte*.

REPORT AND RECOMMENDATION - 1

Derrick's habeas petition be **DENIED**, and this action be **DISMISSED** with prejudice.

**BACKGROUND**

Mr. Derrick is a native and citizen of Pakistan who came to the United States on an immigrant visa in March 1983 and subsequently became a Lawful Permanent Resident. *See* Dkt. 7-1; Dkt. 14 at ¶ 3. At the time of his admission, he was traveling on a Pakistani passport. Dkt. 14 at ¶ 3.

In January 2006, an Oregon state court convicted him of 16 counts of first degree sexual abuse and sentenced him to 150 months in prison. *Id.* at ¶ 4; Dkt. 7-2. In June 2017, the U.S. Department of Homeland Security ("DHS") issued a Notice to Appear, alleging that Mr. Derrick is removable based on his criminal convictions. Dkt. 14 at ¶ 5; Dkt. 7-3.

On July 14, 2017, Mr. Derrick was released from state custody and transferred to DHS custody. Dkt. 14 at ¶ 6; Dkt. 7-4. On March 15, 2018, the IJ held a merits hearing, denied Mr. Derrick's application for relief from removal, and ordered him removed to Pakistan. Dkt. 14 at ¶ 15; Dkt. 7-8. Mr. Derrick moved to reopen and appealed the IJ's removal order with the Board of Immigration Appeals ("BIA"). Dkt. 14 at ¶ 16. On July 11, 2018, the BIA dismissed Mr. Derrick's appeal and motion to reopen. *Id.* at ¶ 18; Dkt. 7-10. Mr. Derrick's removal order became administratively final at that time. Dkt. 14 at ¶ 18. Mr. Derrick did not file a petition for review with the Ninth Circuit. *Id.* at ¶ 19.

In April 2018, DHS began making efforts to obtain a travel document from the Pakistani Consulate in Seattle. Dkt. 14 at ¶ 20; Dkt. 7-11. On April 19, 2018, representatives of the Pakistani Ministry of Interior interviewed Mr. Derrick. Dkt. 14 at ¶ 21. At the time, they notified DHS that they would like time to verify and scrutinize Mr. Derrick's national status. *Id.* DHS contacted the Pakistani Consulate on September 5, 2018, and November 8, 2018, and was

informed that Mr. Derrick's case was still with the Ministry of Interior.  *Id.*

On January 7, 2019, a Pakistani Consular Officer conducted a video interview with Mr. Derrick and expressed the view that the evidence of his national status was "weak" but that the Ministry of Interior was still reviewing the case.  *Id.* at ¶ 22.  On February 22, 2019, the Consular Officer interviewed Mr. Derrick in-person.  *Id.*  At that time, DHS provided the Consular Officer with numerous Pakistani passport numbers showing that Mr. Derrick and many of his family members were issued Pakistani passports.  *Id.*  The Consular Officer also requested copies of Mr. Derrick's fingerprints for further investigation and indicated that he would submit the additional evidence to the Pakistani government.  *Id.*

On March 27, 2019, the Consular Officer interviewed Mr. Derrick again.  Dkt. 14 at ¶ 24.  After the interview, the Consular Officer informed Deportation Officer Bradley Kam that the Pakistani records relating to Mr. Derrick's old Pakistani passport would be too old to verify.  *Id.* at ¶ 25.  The Consular Officer, however, did not deny Mr. Derrick's claim that he is a Pakistani citizen and asked DHS to provide Mr. Derrick's Pakistani citizenship number, which would enable the Pakistani government to verify his citizenship.  *Id.*  The Consular Officer further notified Officer Kam that he was submitting Mr. Derrick's case to the Pakistani government in Pakistan for a decision on whether to issue Mr. Derrick a passport.  *Id.*  That decision remains pending.  *Id.*

Given the Consular Officer's reference to a Pakistani citizenship number, Officer Kam reviewed Mr. Derrick's immigration records in more detail and discovered a document in a foreign language that was furnished by Mr. Derrick many years ago, apparently in support of his immigrant visa in 1983.  *Id.* at ¶ 26.  Officer Kam submitted this document to the Language Translation Services branch of DHS for a complete translation with a request that the translation

REPORT AND RECOMMENDATION - 3

be completed by May 8, 2019.  *Id.*  The Government has not informed the Court whether the document contains Mr. Derrick's Pakistani citizenship number or provided any other information regarding the continued efforts to remove him.

## DISCUSSION

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens, like Mr. Derrick, who have been ordered removed.  Under § 1231(a), DHS[2] is required to detain a noncitizen during the 90-day "removal period."  *See* 8 U.S.C. §§ 1231(a)(2), (a)(1)(B).  In Mr. Derrick's case, the removal period began on July 11, 2018, the date his order of removal became administratively final.  *See* 8 U.S.C. § 1231(a)(1)(B)(i).  After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision.  8 U.S.C. § 1231(a)(6).  Specifically, DHS may detain a noncitizen who has been determined "to be a risk to the community or unlikely to comply with the order of removal," or who is inadmissible.  *Id.*  ICE has determined that Mr. Derrick presents a danger to the community.  *See* Dkt. 7-12 at 2.

Although § 1231(a)(6) authorizes ICE to detain Mr. Derrick, it cannot do so indefinitely.  In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States, and does not permit "indefinite" detention.  533 U.S. 678, 701 (2001).  The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals.  *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Nevertheless, courts must remember "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Mr. Derrick's post-removal order detention, which began on July 11, 2018, has exceeded six months. He has not, however, provided a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Mr. Derrick points to the Consular Officer's view that the evidence of his citizenship is "weak." Dkt. 12 at 2. Nevertheless, DHS is working to provide additional evidence and Mr. Derrick's travel document application is still pending with the Pakistani government; both parties are actively addressing the outstanding issues. Given this evidence, the Court concludes that there is a significant likelihood Mr. Derrick will be removed in the reasonably foreseeable future. *See Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008) (detention becomes indefinite if, for example, the country designated in the removal order refuses to accept the noncitizen). Accordingly, his habeas petition should be denied.

**CONCLUSION AND RIGHT TO OBJECT**

The Court recommends that the Government's motion to dismiss, Dkt. 5, be **GRANTED**, Mr. Derrick's habeas petition be **DENIED**, and this action be **DISMISSED** with prejudice. A proposed order accompanies this Report and Recommendation.

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **June 6, 2019.** The Clerk should note the matter for **June 7, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed three pages. The failure to timely object may affect the right to appeal.

DATED this 22nd day of May, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge